ams

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FLOYD MCNEAL,                        )
                                     )
                 Plaintiff,          )
                                     )
vs.                                  )
                                     )    Case No. 07-4125-JAR
MIKE CUSTENBORDER, et al.            )
                                     )
                 Defendants.         )
_____)

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court upon defendant Mike Custenborder's Motion for

Summary Judgment (Doc. 27).  Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against

Officer Custenborder and two other police officers alleging violations of his constitutional rights

resulting from plaintiff's detention during a traffic stop.  Plaintiff has not filed a response to

defendant's motion and the time to do so has expired.[1]  As explained more fully below,

defendant's motion for summary judgment is granted.

## I.        Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1]*See* D. Kan. R. 6.1(d)(2) (requiring a response to a dispositive motion to be filed within 23 days).
Defendant Custenborder filed his summary judgment motion on April 15, 2008.  Plaintiff filed a motion for
extension of time to file his response on May 8, 2008, which was granted by Judge Sebelius on June 4, 2008.  In an
Amended Scheduling Order filed on June 4, 2008, Judge Sebelius set a July 7, 2008 deadline for plaintiff to respond.
No response was filed by this deadline.

of law."[2]  A fact is only material under this standard if a dispute over it would affect the outcome

of the suit.[3]  An issue is only genuine if it "is such that a reasonable jury could return a verdict

for the nonmoving party."[4]  The inquiry essentially determines if there is a need for trial, or

whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

     The moving party bears the initial burden of providing the court with the basis for the

motion and identifying those portions of the record that show the absence of a genuine issue of

material fact.[6]  "A movant that will not bear the burden of persuasion at trial need not negate the

nonmovant's claim."[7]  The burden may be met by showing that there is no evidence to support

the nonmoving party's case.[8]  If this initial burden is met, the nonmovant must then "go beyond

the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of

trial from which a rational trier of fact could find for the nonmovant."[9] When examining the

underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light

most favorable to the nonmoving party and that it may not make credibility determinations or

---

[2]Fed. R. Civ. P. 56(c).

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4]*Id.*

[5]*Id.* at 251–52.

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[8]*Id.*

[9]*Id.*

2

weigh the evidence.[10]

Under D. Kan. Rule 7.4, a "failure to file a brief or response within the time specified . . . shall constitute a waiver of the right thereafter to file such brief or response . . . ."[11]  Further, if a "respondent fails to file a response within the time required . . . the motion will be considered and decided as an uncontested motion and ordinarily will be granted without further notice."[12]  However, "[i]t is improper to grant a motion for summary judgment simply because it is unopposed."[13]  This will be the case where the movant fails to make out a prima facie case for summary judgment.[14]  It is the role of the court to ascertain whether the moving party has sufficient basis for judgment as a matter of law.[15]  In so doing, the court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts.[16]

## II.    Uncontroverted Facts

All material facts set forth by defendant in his motion for summary judgment are deemed admitted for the purpose of summary judgment, as plaintiff has failed to specifically controvert them as required under D. Kan. R. 56.1.

On or about October 26, 2007,  Topeka Police Department (TPD) bike patrol officers

---

[10]*See Scott v. Harris*, –U.S.–, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[11]D. Kan. R. 7.4.

[12]*Id.*

[13]*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Ctl. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

[14]*Id.* (citations omitted).

[15]*Id.* (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[16]*Id.*

observed parolee Sean T. Sutton driving erratically near 8th and Polk Streets in Topeka, Kansas.

The officers were aware that a known drug house was on the northeast corner of 8th and Polk

Streets.   After watching Sutton park the car, officers decided to effect a traffic stop for traveling

the wrong way on a one way street.   Thus, the bike patrol officers, defendants Green and

Hannan, stopped Sutton as Sutton was walking away from the parked vehicle.   After Sutton

advised them that he was a state parolee, officers unsuccessfully attempted to contact Officer

Custenborder, a Special Enforcement Officer Supervisor with the parole section of the Kansas

Department of Corrections ("KDOC").   Officers released Sutton with a verbal warning.

After Sutton had been released, officers were contacted by Custenborder; and

Custenborder came to meet the officers.   When Custenborder arrived at approximately 4:40 p.m.,

the bike units were parked on the north side of 8th Street in an alley.   Officers Green and Hannan

told Officer Custenborder that when they stopped Sutton, he was alone and he had become

belligerent and sarcastic.

While meeting with Custenborder, Officer Green observed Sutton driving the vehicle

southbound on Polk at 8th Street.   Officer Custenborder decided to conduct another traffic stop of

Sutton's vehicle.   After stopping the vehicle near 10th and Western Streets, Officer Custenborder

saw plaintiff in Sutton's vehicle and directed plaintiff to remain in the car while he talked with

Sutton; plaintiff ignored that direction and got out of Sutton's car.

Officer Custenborder knew that plaintiff was on parole at the time of the stop and under

supervision of the KDOC.   In fact, Officer Custenborder had a history with plaintiff.   Plaintiff

had been convicted in 2005 for obstruction of legal process for an incident in which defendant

Custenborder had attempted to arrest plaintiff on a parole absconder warrant.   In 1993, when

4

Officer Custenborder worked for the Shawnee County Department of Corrections, plaintiff threw scalding water in Officer Custenborder's face.[17]  As a condition of plaintiff's parole, he could be subjected to a search by a parole officer or designated law enforcement official at any time.

Officers Green and Hannan intercepted plaintiff while Officer Custenborder searched and questioned Sutton.  Plaintiff then returned to Sutton's vehicle and was told he was free to go. Officer Custenborder's encounter with plaintiff was completed at approximately 4:50 p.m.

## III.   Discussion

### A.   *Individual Capacity Claims*

In an action under 42 U.S.C. § 1983, a suit against a government official may be made to impose individual liability for actions taken under color of state law.[18]  In order to establish individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[19]  A defendant sued in his individual capacity may be able to assert personal immunity defenses such as qualified immunity.[20]

Upon a defendant's assertion of a qualified immunity defense, plaintiff has a two-part burden.  First, plaintiff must allege facts showing that the official's conduct violated a constitutional right.[21]  If a violation is shown, "'the next, sequential step is to ask whether the

---

[17]Officer Custenborder was also aware of plaintiff's history of violence toward other law enforcement officials. Plaintiff's record includes convictions for battery against a law enforcement officer and aggravated assault on a law enforcement officer, along with over 100 disciplinary reports while in KDOC custody.

[18]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[19]*Id.* at 165.

[20]*Id.*

[21]*Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

right was clearly established.'"[22]  The issue of immunity is a legal one and the Court may not avoid it by framing it as a factual issue.[23]  The Supreme Court counsels that before addressing the issue of qualified immunity, the Court must first consider: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[24]

Liberally construing plaintiff's Complaint in this case, plaintiff alleges Fourth, Fifth, and Fourteenth Amendment violations against Officer Custenborder in his individual capacity. Plaintiff's Complaint alleges that he was "detained by officers at the verbal command of defendant custenborder [sic] with out any reason given nor was plaintiff the target of this stop." The Court also construes plaintiff's Complaint as asserting a due process claim due to his "loss of freedom."

## 1.      Fourth Amendment

Officer Custenborder argues that plaintiff is unable to show his conduct violated plaintiff's constitutional rights.  As to the Fourth Amendment claim, Officer Custenborder maintains that any seizure of plaintiff was reasonable under the circumstances.  The Court agrees.  To establish a violation, plaintiff must demonstrate that a seizure occurred and that the seizure was unreasonable.[25]  To determine reasonableness, the Court must balance "the governmental interest which allegedly justifies official intrusion" against "the constitutionally

---

[22]*Id.* (quoting *Saucier*, 533 U.S. at 201).

[23]*Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

[24]*Saucier*, 533 U.S. at 201; *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

[25]*See, e.g.*, *Bradford v. Wiggins*, 516 F.3d 1189, 1196 (10th Cir. 2008).

protected interests of the private citizen."[26]

Here, the governmental interest at stake was substantial, as the United States Supreme

Court has explained:

> This Court has repeatedly acknowledged that a State has an
> "overwhelming interest" in supervising parolees because "parolees
> . . . are more likely to commit future criminal offenses." Similarly,
> this Court has repeatedly acknowledged that a State's interests in
> reducing recidivism and thereby promoting reintegration and
> positive citizenship among probationers and parolees warrant
> privacy intrusions that would not otherwise be tolerated under the
> Fourth Amendment.[27]

When Officer Custenborder noticed plaintiff sitting in the passenger seat of Sutton's vehicle, it

was reasonable for him to make the split-second decision that plaintiff should remain in the

vehicle while he spoke to Sutton outside the vehicle.[28]   Additionally, it was reasonable for

Officer Custenborder to conclude, based on his knowledge of and history with plaintiff, that

plaintiff's actions of disregarding his order to stay in the vehicle could place his or the other

officers' safety at risk.   The relatively brief detention of plaintiff for approximately five minutes

was reasonable under the circumstances and did not constitute a Fourth Amendment violation.

### 2.      Due Process

Plaintiff alleges a general claim of due process under the Fifth and Fourteenth

Amendments based on the same conduct that forms the basis for his claim under the Fourth

Amendment—his detention during the traffic stop.   But the Fifth and Fourteenth Amendments

---

[26]*Id.* (quotations and citations omitted).

[27]*Samson v. California*,  547 U.S. 843, 853 (2006) (quoting *Penn. Bd. of Probation & Parole v. Scott*, 524
U.S. 357, 365 (1998)).  The Court has also made clear that parolees have more limited Fourth Amendment rights
than those of ordinary citizens.  *Id.*

[28]*Bradford*, 516 F.3d at 1196 (explaining that the reasonableness inquiry subsumes "that officers are
frequently forced to make split-second decisions under stressful and dangerous conditions.").

prohibit deprivations of "life, liberty or property without due process of law."  The Supreme

Court has held that "[w]here a particular Amendment 'provides an explicit textual source of

constitutional protection' against a particular sort of government behavior, 'that Amendment, not

the more generalized notion of "substantive due process," must be the guide for analyzing these

claims.'"[29]  Because the Fourth Amendment explicitly addresses plaintiff's due process claim

regarding his "loss of freedom," that Amendment is the proper basis under which to consider his

claim.  Therefore, plaintiff fails to allege a constitutional claim of a due process violation against

Officer Custenborder in his individual capacity.

Because plaintiff fails to demonstrate a constitutional violation, Officer Custenborder is

entitled to qualified immunity and all claims alleged against him in his individual capacity are

dismissed.

### B.    Official Capacity Claim

To the extent plaintiff alleges a claim against Officer Custenborder in his official

capacity as a KDOC official, it is considered a suit against the State of Kansas.  The Eleventh

Amendment bars suits brought by litigants under § 1983 unless the State has waived its

immunity.[30]  Here, the State of Kansas has not consented to suit; nor has Congress abrogated the

states' immunity pursuant to section five of the Fourteenth Amendment for suits under section

1983.[31]  Therefore, the Court grants Officer Custenborder's motion for summary judgment on

---

[29]*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Turner v. Houseman*, 268 F. App'x 785, 787 (10th Cir. 2008).

[30]*Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989).

[31]*Id.* at 63; *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) ("Kansas has not unmistakably waived its Eleventh Amendment immunity, and Congress has not abrogated that immunity [when it enacted § 1983]").

any claims against the Kansas Department of Corrections.[32]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Mike

Custenborder's Motion for Summary Judgment (Doc. 27) is granted.

**IT IS FURTHER ORDERED THAT** defendant Mike Custenborder's Motion for

Ruling on Motion for Summary Judgment and for Stay of Pretrial Proceedings (Doc. 39) is

denied as moot.

**IT IS SO ORDERED.**

Dated this 4th day of August, 2008

      S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[32]While the Complaint does not appear to allege state law claims, even if the Court were to construe it as alleging state law claims, the Court would decline to exercise supplemental jurisdiction over them in light of the fact there is no remaining constitutional claim.  28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'"  *City of Chicago  v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union,* 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Commr's*, 365 F.3d 855 (10th Cir. 2004).
    Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.  *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (collecting cases); *see also Roe v. Cheyenne Mountain Conference Resort, Inc*., 124 F.3d 1221, 1237 (10th Cir. 1997). This general practice is in keeping with the holdings of the Supreme Court and the Tenth Circuit.  *Ball*, 54 F.3d at 669. "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  *Thatcher Enters. v. Cache County Corp*., 902 F.2d 1472, 1478 (10th Cir. 1990).