dlm

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FLOYD E. MCNEAL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 07-4125-JAR |
| MIKE CUSTENBORDER, et al. | ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER GRANTING DEFENDANTS GREEN'S AND HANNAN'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court upon defendants Lance Green's and Pat Hannan's Motion for Summary Judgment (Doc. 42). Plaintiff McNeal filed this action pursuant to 42 U.S.C. § 1983 against Topeka Police Officers Green and Hannan and State Parole Officer Mike Custenborder; defendant Custenborder was dismissed after this Court granted his motion for summary judgment (Doc. 43). McNeal's Complaint alleges violations of his constitutional rights resulting from his detention during a traffic stop. McNeal has not filed a response to the defendants' motion and the time to do so has expired.[1] As explained more fully below, the defendants motion for summary judgment is granted.

**I.    Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[1] *See* D. Kan. R. 6.1(d)(2) (requiring a response to a dispositive motion to be filed within 23 days). Defendants Green and Hannan filed their summary judgment motion on July 28, 2008. Plaintiff did not file a response within the 23 day time period.

of law."[2] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[3] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the Court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[10]

Under D. Kan. Rule 7.4, a "failure to file a brief or response within the time specified . . .

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Id.* at 251–52.

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[8] *Id.*

[9] *Id.*

[10] *See Scott v. Harris*, –U.S.–, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

of law."[2] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[3] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[4] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[5]

The moving party bears the initial burden of providing the Court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[6] "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[7] The burden may be met by showing that there is no evidence to support the nonmoving party's case.[8] If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[10]

Under D. Kan. Rule 7.4, a "failure to file a brief or response within the time specified . . .

---

[2] Fed. R. Civ. P. 56(c).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[4] *Id.*

[5] *Id.* at 251–52.

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[8] *Id.*

[9] *Id.*

[10] *See Scott v. Harris*, –U.S.–, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

shall constitute a waiver of the right thereafter to file such brief or response . . . ."[11]  Further, if a "respondent fails to file a response within the time required . . . the motion will be considered and decided as an uncontested motion and ordinarily will be granted without further notice."[12] However, "[i]t is improper to grant a motion for summary judgment simply because it is unopposed."[13]  This will be the case where the movant fails to make out a prima facie case for summary judgment.[14]  It is the role of the Court to ascertain whether the moving party has sufficient basis for judgment as a matter of law.[15]  In so doing, the Court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts.[16]

## II. Uncontroverted Facts

All material facts set forth by defendants in this motion for summary judgment are deemed admitted for the purpose of summary judgment, as plaintiff has failed to specifically controvert them as required under D. Kan. R. 56.1.

On October 26, 2007, Topeka Police Department (TPD) bike patrol officer Green and his partner observed parolee Sean T. Sutton driving southbound on SW Polk Street approaching 8th Street in Topeka, Kansas.  Officer Green was aware that a known drug house was on the northeast corner of 8th Street and SW Polk Street.  Officer Green watched Sutton stop in the middle of the street, reverse direction—SW Polk Street is a one way street—and park the

---

[11]D. Kan. R. 7.4.

[12]*Id*.

[13]*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Ctl. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985)).

[14]*Id*. (citations omitted).

[15]*Id*. (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[16]*Id*.

vehicle. A man standing in the yard of the known drug house began to approach the parked vehicle. As the man approached Sutton's vehicle, he noticed Officer Green and his partner sitting in an alley. The man then turned around and returned to the house. Sutton continued southbound in his vehicle, past 8th Avenue, and parked in a private lot to the east of SW Polk Street.

      The officers decided to effect a traffic stop for traveling the wrong way on a one way street. Officer Green and his partner stopped Sutton as Sutton was walking away from the parked vehicle. After Sutton advised them that he was a state parolee, the officers unsuccessfully attempted to contact Officer Custenborder, a Special Enforcement Officer Supervisor with the parole section of the Kansas Department of Corrections. The officers released Sutton with a verbal warning.

      After Sutton had been released, Officer Hannan met up with Officer Green and his partner. The three officers were then contacted by Officer Custenborder; the four decided to meet at 8th and Polk to discuss the stop of Sutton. The bike units were parked on the north side of 8th Street in an alley when Officer Custenborder arrived at approximately 4:40 p.m. The officers told Officer Custenborder that Sutton became belligerent and sarcastic during the stop.

      While meeting with Officer Custenborder, Officer Hannan observed Sutton driving the same vehicle southbound on SW Polk Street at 8th Street. Officer Custenborder decided to conduct another traffic stop of Sutton's vehicle. He stopped the vehicle near 10th Avenue and Western Avenue. About this same time, Officers Green and Hannan arrived to assist Officer Custenborder. Officer Custenborder saw plaintiff McNeal in Sutton's vehicle and directed McNeal to remain in the vehicle while he talked with Sutton.

      Officer Custenborder told Officers Green and Hannan that McNeal was in the vehicle and

that McNeal had a history of being combative and confrontational with police officers. Officer Hannan knew McNeal and his history of assaulting police officers.

Officer Custenborder returned to the driver's side of the vehicle and asked Sutton to come with him. He again instructed McNeal to remain seated in the vehicle. As Officers Custenborder and Sutton returned, McNeal got out of Sutton's vehicle. Officers Green and Hannan then immediately went to McNeal and stopped him at the rear of the vehicle. Officer Hannan asked McNeal why he got out of the vehicle when he was instructed to remain seated. McNeal began to complain that he was being harassed by the officers.

Officers Green and Hannan then asked McNeal to place his hands behind his back. After McNeal complied with the request, Officer Hannan conducted a pat down of McNeal's outer clothing. McNeal then complained that he had been illegally searched. Officer Hannan explained that he did not search McNeal, but only conducted a legal pat down of his clothing. He explained the reasoning for the pat down, but McNeal complained that he was stopped because he was black. At this point, Officers Green and Hannan released McNeal.

McNeal was detained for less than one minute. The rest of the encounter lasted about four minutes and consisted of conversation between McNeal and the officers concerning their legal authority to pat down McNeal.

## III.   Discussion

### A.   *Individual Capacity Claims*

In an action under 42 U.S.C. § 1983, a suit against a government official may be made to impose individual liability for actions taken under color of state law.[17] In order to establish

---

[17]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

individual liability in a § 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[18]  A defendant sued in his individual capacity may be able to assert personal immunity defenses such as qualified immunity.[19]

Upon a defendant's assertion of a qualified immunity defense, plaintiff has a two-part burden.  First, plaintiff must allege facts showing that the official's conduct violated a constitutional right.[20]  If a violation is shown, "'the next, sequential step is to ask whether the right was clearly established.'"[21]  The issue of immunity is a legal one and the Court may not avoid it by framing it as a factual issue.[22]  The Supreme Court counsels that before addressing the issue of qualified immunity, the Court must first consider: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"[23]

Liberally construing McNeal's Complaint in this case, McNeal alleges Fourth, Fifth, and Fourteenth Amendment violations against Officers Green and Hannan in their individual capacities.  McNeal's Complaint alleges that he was "seized by two defendant Topeka police officers Green and Hannan who bent his arms back in a manner which induced severe pain, commence to search plaintiffs [sic] person and detained him of his freedom of movement with out providing any excuse whatsoever as to why this was occurring to plaintiff."  The Court also construes McNeal's Complaint as asserting a due process claim due to his "loss of freedom."

---

[18]*Id.* at 165.

[19]*Id.*

[20]*Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

[21]*Id.* (quoting *Saucier*, 533 U.S. at 201).

[22]*Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

[23]*Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

### 1. Unreasonable Seizure and Detention

Officers Green and Hannan argue that McNeal is unable to show their conduct violated McNeal's constitutional rights. As to the Fourth Amendment claim, Officers Green and Hannan maintain that any seizure of McNeal was reasonable under the circumstances. The Court agrees. To establish a violation, McNeal must demonstrate that a seizure occurred and that the seizure was unreasonable.[24] To determine reasonableness, the Court must balance "the governmental interest which allegedly justifies official intrusion" against "the constitutionally protected interests of the private citizen."[25]

Here, the governmental interest at stake was substantial, as the United States Supreme Court has explained:

> This Court has repeatedly acknowledged that a State has an "overwhelming interest" in supervising parolees because "parolees . . . are more likely to commit future criminal offenses." Similarly, this Court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment.[26]

When Officers Green and Hannan noticed McNeal getting out of the vehicle after being instructed to remain in the vehicle by Officer Custenborder, it was reasonable for them to make the split-second decision that, based on their knowledge of and history with McNeal, McNeal's actions of disregarding the order to stay in the vehicle could place any of the officers' safety at

---

[24]*See, e.g.*, *Bradford v. Wiggins*, 516 F.3d 1189, 1196 (10th Cir. 2008).

[25]*Id.* (quotations and citations omitted).

[26]*Samson v. California*, 547 U.S. 843, 853 (2006) (quoting *Penn. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 365 (1998)). The Court has also made clear that parolees have more limited Fourth Amendment rights than those of ordinary citizens. *Id.*

7

risk.[27]  The relatively brief detention of McNeal for approximately five minutes was reasonable under the circumstances and did not constitute a Fourth Amendment violation.

### 2. Excessive Use of Force

The Court construes McNeal's allegation that Officers Green and Hannan "bent his arms back in a manner which induced severe pain" as an excessive force claim under the Fourth Amendment.  A claim of excessive force in the course of seizing a person is analyzed under the Fourth Amendment's objective reasonableness standard.[28]  This standard requires the Court to "'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'"[29]  Among other factors, the Court should look to "(1) whether the victim was suspected of a crime, (2) the severity of the crime, (3) whether the suspect was armed, (4) the suspect's compliance with police commands, and (5) the danger created by the encounter."[30]  "The Fourth Amendment standard requires police conduct to be objectively reasonable in light of the facts and circumstances surrounding the defendants irrespective of their underlying intent or motivation."[31]  "Reasonableness must be viewed from the vantage point of the defendants on the scene."[32]  "The court cannot, in the serenity of its chambers, apply 20/20 hindsight in

---

[27]*Bradford*, 516 F.3d at 1196 (explaining that the reasonableness inquiry subsumes "that officers are frequently forced to make split-second decisions under stressful and dangerous conditions.").

[28]*Scott v. Harris*, — U.S. —, 127 S. Ct. 1769, 1776 (2007) (internal quotation omitted).

[29]*Id.* (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

[30]*Williams v. Berney*, 519 F.3d 1216, 1221 (10th Cir. 2008) (citing *Estate of Larsen ex rel Sturdivan v. Murr*, 511 F.3d 1255, 1259-61 (10th Cir. 2008)).

[31]*Pride v. Kan. Highway Patrol*, 481 F. Supp. 279, 281 (D. Kan. 1992) (citing *Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992)).

[32]*Id.*

determining the reasonableness of the defendants' actions."[33]  Furthermore, "to successfully state an excessive force claim, the plaintiff must establish that he suffered significant injury or that the defendant's actions were sufficiently reprehensible."[34]

The Court finds little difficulty in determining that Officers Green's and Hannan's minimal use of force to temporarily detain McNeal was justified under the circumstances. Officer Custenborder stopped Sutton's vehicle after Officers Green and Hannan had observed Sutton reverse down a one-way street,  park in front of a known drug house, and observed a man from the house approach the vehicle and then turn away when he noticed the officers.  Later, McNeal disregarded Officer Custenborder's request to remain seated in the vehicle.  Officers Green and Hannan were aware, at the time of the detention, that McNeal was on parole and had a history of assaulting police officers.  McNeal was asked to turn away from the officers and place his hands behind his back with his fingers interlocked.  McNeal complied with the request. Officer Hannan held onto McNeal's hands while performing a pat down of McNeal's outer clothing and Officer Green placed his hand on McNeal's shoulder.  There is no evidence that McNeal was struck or otherwise injured.

There is no evidence that McNeal was handcuffed; however, given McNeal's history of assaulting police officers, it would have been reasonable under the circumstances for the officers to do so for their own safety.[35]  The entire encounter lasted about one minute.  Therefore, Officers Green and Hannan did not violate McNeal's Fourth Amendment right by using

---

[33]*Id.*

[34]*Id.* at 282 (citing *Frohmader*, 958 F.2d at 1026).

[35] *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993) ("Since police officers should not be required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a Terry] stop.'" quoting *United States v. Hensley*, 469 U.S. 221, 235,  (1985)).

excessive force to detain him, because they reasonably believed that McNeal posed a threat of serious physical harm to the officers when he exited the vehicle against the request of Officer Custenborder.

### 3. Racial Profiling

McNeal asserts he "was stopped because he was a black male." This allegation could be construed as a claim of ethnic profiling in violation of the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court in *Whren* recognized "that the Constitution [Equal Protection Clause] prohibits selective enforcement of the law based on considerations such as race."[36] There is no creditable evidence of record to indicate that Officers Green and Hannan's decision to stop McNeal was based on racial considerations. McNeal offers no evidence that he was a target of racial profiling, nor could this be reasonably inferred by viewing the evidence in light most favorable to McNeal.[37] McNeal's argument that his African ancestry motivated the officers to stop and detain him is sheer speculation. The Court finds no substance to McNeal's equal protection argument.

### 4. Due Process

McNeal alleges a general claim of due process under the Fifth and Fourteenth Amendments based on the same conduct that forms the basis for his claim under the Fourth Amendment—his detention during the traffic stop. But the Fifth and Fourteenth Amendments prohibit deprivations of "life, liberty or property without due process of law." The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not

---

[36]*Whren v. U.S.*, 517 U.S. 806, 813 (1996).

[37]*See United States v. Saucedo*, 226 F.3d 782, 790 (6th Cir. 2000), *cert. denied*, 531 U.S. 1102 (2001).

the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'"[38]  Because the Fourth Amendment explicitly addresses McNeal's due process claim regarding his "loss of freedom," that Amendment is the proper basis under which to consider his claim.  Therefore, McNeal fails to allege a constitutional claim of a due process violation against Officers Green or Hannan in their individual capacities.

Because McNeal fails to demonstrate a constitutional violation, Officers Green and Hannan are entitled to qualified immunity and all claims alleged against them in their individual capacities are dismissed.

### B.   *Official Capacity Claim*

To the extent McNeal alleges a claim against Officers Green and Hannan in their official capacities as TPD officials, it is considered a suit against the City of Topeka.[39]  Municipalities and other local governments, such as counties, may be sued under § 1983 for constitutional torts.[40]  A local government may be held liable where its action "*itself* violates federal law, or directs an employee to do so."[41]  In order to establish liability, the government official must have committed a constitutional violation, and the entity itself must have been the "moving force" behind the alleged deprivation; the entity's "policy or custom" must have contributed toward the constitutional violation.[42]

As is the case with supervisory liability, "a municipality may not be held liable where

---

[38]*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *see also Turner v. Houseman*, 268 F. App'x 785, 787 (10th Cir. 2008).

[39]*See Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998).

[40]*Id.* at 1316.

[41]*Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 404–05 (1997).

[42]*Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Monell v. Dept. of Soc. Servs. of the City of New York*, 436 U.S. 658, 694–95 (1978); *Myers*, 151 F.3d at 1316.

there was no underlying constitutional violation by any of its officers."[43]  In this case, the Court has found that McNeal fails to state a claim against Officers Green and Hannan for any violation of McNeal's constitutional rights when he was temporarily detained.  Therefore, the Court concludes that McNeal also has not stated a claim against the City of Topeka and grants Officers Green's and Hannan's motion for summary judgment on any claims against the City of Topeka.[44]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Green's and Hannan's Motion for Summary Judgment (Doc. 42) is GRANTED.

**IT IS SO ORDERED.**

Dated this 11th day of September, 2008.

S/ Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[43]*Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993); *see also Jiron v. City of Lakewood*, 392 F.3d 410, 419 n.8 (10th Cir. 2004) ("[W]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation . . . a finding of qualified immunity *does* preclude the imposition of municipal liability." (citation omitted)).

[44]While the Complaint does not appear to allege state law claims, even if the Court were to construe it as alleging state law claims, the Court would decline to exercise supplemental jurisdiction over them in light of the fact there is no remaining constitutional claim.  28 U.S.C. § 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Gold v. Local 7 United Food & Commercial Workers Union,* 159 F.3d 1307, 1310 (10th Cir. 1998), *overruled on other grounds by Styskal v. Weld County Commr's*, 365 F.3d 855 (10th Cir. 2004).
   Upon a pretrial disposition of the federal claims, district courts will generally dismiss the state law claims without prejudice.  *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (collecting cases); *see also Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1237 (10th Cir. 1997). This general practice is in keeping with the holdings of the Supreme Court and the Tenth Circuit.  *Ball*, 54 F.3d at 669. "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).